United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8                          IN THE UNITED STATES DISTRICT COURT

9                         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   KEVIN SULLIVAN, an individual and          No. C-10-1447 MMC
     WHOLESALE WOODFLOOR
12   WAREHOUSE, a Nevada corporation,
                                                 **ORDER DENYING DEFENDANT'S**
13               Plaintiffs,                      **MOTION TO DISMISS; GRANTING**
                                                 **DEFENDANT'S ALTERNATIVE MOTION**
14     v.                                        **TO STAY; STAYING ACTION PENDING**
                                                 **RESOLUTION OF ARBITRATION;**
15   LUMBER LIQUIDATORS, INC. a Delaware         **VACATING MAY 28, 2010 HEARING**
     corporation,
16
                 Defendant.
17   _____/

18

19
20        Before the Court is defendant Lumber Liquidators, Inc.'s ("Lumber Liquidators"),

21   Motion to Dismiss or, in the Alternative, to Stay Pending Arbitration, filed April 22, 2010.

22   Plaintiffs Kevin Sullivan ("Sullivan") and Wholesale Woodfloor Warehouse have filed

23   opposition, to which Lumber Liquidators has replied.  Having read and considered the

24   papers filed in support of and in opposition to the motion, the Court deems the matter

25   appropriate for determination on the parties' written submissions, hereby VACATES the

26   May 28, 2010 hearing, and rules as follows.

                                          **BACKGROUND**
27
          This case involves a dispute over a family business.  Sullivan's eldest brother, Tom
28
     Sullivan, is the founder and chairman of Lumber Liquidators, a publicly traded company

1   with approximately 195 retail stores located throughout the United States.  (<u>See</u> FAC ¶ 5.)

2   Sullivan was an employee of Lumber Liquidators from 1997 until December 11, 2008.  (<u>See</u>

3   Declaration of Kevin H. Sullivan ("Sullivan Decl.") ¶ 2.)

4       In 1998, Sullivan and Lumber Liquidators executed a stock option agreement.  (<u>See</u>

5   FAC ¶ 8.)  A dispute over the terms of the 1998 stock option agreement resulted in a

6   mediation between the parties in 2005.  (<u>See</u> FAC ¶ 8).  The mediation, in turn, resulted in

7   Sullivan and Lumber Liquidators' entering into a Confidential Release and Settlement

8   Agreement ("the Settlement Agreement") on August 1, 2005.  (<u>See</u> <u>id.</u>; <u>see</u> <u>also</u> Declaration

9   of Farhad Aghdami ("Aghdami Decl.") ¶ 2.)  In conjunction with the Settlement Agreement,

10  Sullivan and Lumber Liquidators also entered into (1) an Employment, Confidentiality, and

11  Non-Competition Agreement (the "Employment Agreement") (<u>see</u> Declaration of E.

12  Livingston B. Haskell, filed April 22, 2010, ("Haskell Decl.") ¶ 3, Ex. 1A ) and (2) a Stock

13  Option Agreement (the "Option Agreement") (<u>see</u> Haskell Decl. ¶ 3, Ex. 1B).  The

14  Settlement Agreement, the Employment Agreement, and the Option Agreement all contain

15  choice-of-law provisions, selecting the law of the Commonwealth of Massachusetts, and

16  provide for arbitration in Boston, Massachusetts.  (<u>See</u> Haskell Decl. ¶ 5, Ex. 1 ¶¶ 9, 10; <u>id.</u>

17  Ex. 1A ¶ 18, Ex. 1B ¶ 17.)

18      The Employment Agreement prohibits Sullivan from (1) competing directly with

19  Lumber Liquidators for a period of two years following the end of his employment with

20  Lumber Liquidators (<u>see</u> Haskell Decl. Ex. 1A ¶ 7), (2) inducing Lumber Liquidators'

21  employees to terminate their relationships with Lumber Liquidators (<u>see</u> Haskell Decl. Ex.

22  1A ¶ 6(b)), and (3) using, disclosing, or copying confidential information (<u>see</u> Haskell Decl.

23  Ex. 1A ¶ 8).  Additionally, the Employment Agreement contains an express provision ("the

24  Arbitration Provision") that all disputes "arising out of or concerning the interpretation or

25  application of" said Agreement "shall be resolved timely and exclusively by final and binding

26  arbitration."  (<u>See</u> Haskel Decl. Ex. 1A ¶ 18.)  Sullivan was represented by his own counsel

27  for the mediation as well as the negotiation and execution of the Settlement Agreement, the

28  Employment Agreement, and the Option Agreement.  (<u>See</u> Affidavit of E. Livingston B.

2

Haskell, filed May 14, 2010 ("Haskell Aff.") ¶ 5; <u>see also</u> Aghdami Decl. ¶¶ 6-11, Exs. 1, 2.)

In December 2007, after Lumber Liquidators' initial public offering of its stock, Sullivan demanded arbitration with Lumber Liquidators in Boston, Massachusetts, over a dispute regarding the amount of compensation he was due under the Option Agreement. (<u>See</u> Haskell Aff. ¶ 7.)  In 2008, Sullivan filed a civil lawsuit against Lumber Liquidators and several of its executives in Massachusetts Superior Court.  (<u>See</u> Haskell Aff. ¶ 8.)  The substance of Sullivan's civil suit was later added to the arbitration.  (<u>See</u> <u>id.</u>)  At the conclusion of the arbitration, the arbitrator awarded Sullivan an after-tax total of 529,027 shares of Lumber Liquidators stock, which shares are currently worth over $15 million. (<u>See</u> Haskell Aff. ¶ 9.)

On December 11, 2008, Lumber Liquidators terminated Sullivan's employment. (<u>See</u> Declaration of Robert Morrison ("Morrison Decl.") ¶¶ 13-15.)  On the day of his termination, Sullivan refused to return his company-issued laptop. (<u>See</u> Morrison Decl. ¶¶ 16-21.)  According to Lumber Liquidators, Sullivan later returned the laptop but copied its contents before doing so.  (<u>See</u> Morrison Decl. ¶ 23.)  Thereafter, on January 20, 2009, Sullivan founded a retail flooring business known as Wholesale Woodfloor Warehouse, which directly competes with Lumber Liquidators.  (<u>See</u> Sullivan Decl. ¶ 7, Exs. B, C). Wholesale Woodfloor Warehouse is a Nevada Corporation that presently operates retail stores in Long Beach and Sacramento, California.  (<u>See</u> FAC ¶ 3.)

On March 5, 2010, Lumber Liquidators filed an arbitration demand with the American Arbitration Association ("AAA"), seeking damages for alleged breach of the Employment Agreement based on the above-referenced actions on the part of Sullivan ("the Arbitration").  (<u>See</u> Sullivan Decl. ¶ 9; <u>see also</u> Haskell Decl. Ex. 4.)  Thereafter, on March 15, 2010, Lumber Liquidators filed a civil action in Massachusetts Superior Court, seeking interim relief pending resolution of the Arbitration. (<u>See</u> Sullivan Decl. ¶ 10, Ex. E; <u>see also</u> Haskell Decl. Ex. 6.)  On April 1, 2010, Sullivan filed in California, in San Francisco Superior Court, a complaint for injunctive relief, seeking to enjoin Lumber Liquidators from enforcing the non-competition clause contained in the Employment Agreement, and, on

1  April 5, 2010, a First Amended Complaint ("FAC") was filed, adding Sullivan's corporation,

2  Wholesale Woodfloor Warehouse, as a party plaintiff to said action.  (See Declaration of E.

3  Livingston B. Haskell in Support of Removal, filed April 6, 2010, Ex. A.)  On April 6, 2010,

4  Lumber Liquidators removed the action to federal district court on the basis of diversity

5  jurisdiction, pursuant to 28 U.S.C. § 1332.  (See id.)

6                              **LEGAL STANDARD**

7          Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid,

8  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

9  revocation of any contract."  See 9 U.S.C. § 2.  The FAA "not only placed arbitration

10  agreements on equal footing with other contracts, but established a federal policy in favor

11  of arbitration."  See Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002).

12          In determining the validity of an arbitration agreement, federal courts "'apply ordinary

13  state-law principles that govern the formation of contracts.'"  See id. at 892 (quoting First

14  Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  Thus, "general contract

15  defenses such as fraud, duress, or unconscionability, grounded in state contract law, may

16  operate to invalidate arbitration agreements." Circuit City, 279 F.3d at 892.

17                                **DISCUSSION**

18          Sullivan does not dispute that he is a party to the Employment Agreement or that his

19  claims fall within the scope of the Arbitration Provision contained therein.  Rather, Sullivan

20  argues, the Arbitration Provision is unenforceable.  Specifically, Sullivan argues that the

21  choice-of-law provision contained in the Employment Agreement is, by its terms, applicable

22  only in the context of an arbitration or, at best, is ambiguous in that respect, and that even if

23  the choice-of-law provision is deemed applicable to the entire agreement, California law

24  applies to the instant action and the Arbitration Provision is unenforceable under California

25  law as unconscionable and in violation of California public policy.  Lumber Liquidators, by

26  contrast, argues that Massachusetts law governs the Employment Agreement in its entirety

27

28

4

1    and that, in any event, the Arbitration Provision is enforceable under California law.[1]

2         As discussed below, even assuming California law applies, Sullivan fails to show

3    the Arbitration Provision is unconscionable or otherwise unenforceable thereunder.

4         **A.    Unconscionability**

5         "California law, like federal law, favors enforcement of valid arbitration agreements."

6    See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 97 (2000).

7    "[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and

8    enforceable, save upon such grounds as exist at law or in equity for the [rescission] of any

9    contract."  See id. at 98 & n.4.

10        A party moving for arbitration "bears the burden of proving the existence of a valid

11   arbitration agreement by the preponderance of the evidence, and a party opposing the

12   [motion] bears the burden of proving by a preponderance of the evidence any fact

13   necessary to its defense."  See Bruni v. Didion, 160 Cal.App. 4th 1272, 1282 (2008)

14   (internal quotation and citation omitted).  Unconscionability is one of several grounds upon

15   which a contract, including a contract to arbitrate, may be found unenforceable.  See Cal.

16   Civ.Code § 1670.5(a); see also Szetela v. Discover Bank, 97 Cal.App. 4th 1094, 1099

17   (2002).  Consequently, the party opposing arbitration has the burden of proving the

18   arbitration provision is unconscionable.  See id.

19        Unconscionability includes both a "procedural" and a "substantive" element.  See

20   Armendariz, 24 Cal. 4th at 114.  The focus of the procedural element is on "oppression" or

21   "surprise."  See id.  "'Oppression' arises from an inequality of bargaining power which

22   results in no real negotiation and 'an absence of meaningful choice.'"  A & M Produce Co.

23   v. F.M.C. Corp., 135 Cal.App. 3d 473, 486 (1982) (internal quotation and citation omitted).

24   "'Surprise' involves the extent to which the supposedly agreed-upon terms are hidden in a

25   prolix printed form drafted by the party seeking to enforce them."  Id.  "The procedural

26   element of an unconscionable contract generally takes the form of a contract of adhesion."

27   _____

28        [1]  Sullivan makes no argument that the Arbitration Provision would be considered
     unconscionable or otherwise unenforceable under Massachusetts law.

1    See Discover Bank v. Superior Court of L.A., 36 Cal. 4th 148, 160 (2005).  Substantive

2    unconscionability focuses on whether the contract or provision thereof leads to "overly

3    harsh" or "one-sided" results.  See Armendariz, 24 Cal. 4th at 114.  To be unenforceable, a

4    contract must be both procedurally and substantively unconscionable.  See id.

5           California courts apply a "sliding scale" analysis in making determinations of

6    unconscionability: "the more substantively oppressive the contract term, the less evidence

7    of procedural unconscionability is required to come to the conclusion that the term is

8    unenforceable, and vice versa."  See Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072

9    (9th Cir.2007) (quoting Armendariz, 24 Cal. 4th at 99). Thus, although both procedural and

10   substantive unconscionability must be present for the contract to be declared

11   unenforceable, they need not be present to the same degree.  See Harper v. Ultimo, 113

12   Cal.App. 4th 1402 (2003).

13          The validity of an arbitration clause, absent an express agreement "clearly and

14   unmistakably" reserving such issue for the arbitrator, is a question of law to be resolved by

15   the court.  See Howsam v. Dean Whitter Reynolds, Inc., 537 U.S. 79, 83 (2002); Bruni, 160

16   Cal.App. 4th at 1283, 1286-88.  Here, neither party has identified such an agreement.

17   Accordingly, the Court next turns to the question of unconscionability.  In determining that

18   issue, the Court "sits as a trier of fact, weighing all the affidavits, declarations, and other

19   documentary evidence, as well as oral testimony received at the court's discretion, to reach

20   a final determination."  See id. (citing Engalla v. Permanente Medical Group, Inc., 15 Cal.

21   4th 951, 972 (1997).

22                        **1.     Procedural Unconscionability**

23          Sullivan argues the Arbitration Provision of the Employment Agreement is

24   procedurally unconscionable (1) because Sullivan was required by Lumber Liquidators to

25   execute the agreement "as a condition of continued employment and to receive deferred

26   compensation" (see Pl.'s Opp'n at 9:15-22) and (2) because the Arbitration Provision

27   "incorporates by reference the National Rules for the Resolution of Employment Disputes of

28   the American Arbitration Association ("AAA Rules") and fails to attach the rules for

1    Sullivan's review, or to specify which version of the rules will apply." (See Pl.'s Opp'n at

2    9:14-10:2).  The Court finds Sullivan's arguments unpersuasive.

3            First, Sullivan fails to aver or otherwise offer evidence to demonstrate he had no

4    opportunity to negotiate the terms of the Arbitration Provision.  Rather, he states he "did not

5    negotiat[e] the terms of the arbitration clause in paragraph 18."  (See Sullivan Decl. ¶ 6.)

6    Such statement is, at best, ambiguous, particularly in light of the uncontroverted evidence

7    that Sullivan was represented by counsel in the negotiation and execution of all three of the

8    related agreements. (See Haskell Aff. ¶ 5; Aghdami Decl ¶ 6.  )  Indeed,  Lumber

9    Liquidators has offered evidence that Sullivan's counsel "drafted portions of the

10   Employment Agreement on Sullivan's behalf [and] made comments and negotiated

11   changes to the Employment Agreement on Sullivan's behalf."  (See Aghdami Decl. ¶¶ 7-10,

12   Exs. 1, 2).  Sullivan has submitted no evidence in contradiction thereof.

13           Moreover, even if Lumber Liquidators insisted on inclusion of the Arbitration

14   Provision, the taking of such position under the circumstances pertaining, namely, in the

15   course of negotiations over a global resolution of the parties' disputes concerning their past

16   and continuing relationship, would not serve to render such provision unconscionable or

17   otherwise unenforceable under California law.  Clearly, neither the Employment Agreement

18   nor any provision therein constitutes a contract of adhesion.  See Circuit City Stores v.

19   Adams, 279 F.3d 889, 893 (2002) (defining contract of adhesion, under California law, as

20   "standard-form contract, drafted by the party with superior bargaining power, which

21   relegates to the other party the option of either adhering to its terms without modification or

22   rejecting the contract entirely"); see, e.g., Szetela, 97 Cal.App. 4th at 1100 (finding

23   arbitration clause contained in amendment to cardholder agreement constituted

24   procedurally unconscionable "bill stuffer").  Sullivan cites to no authority in which a party's

25   insistence on the inclusion of any particular term in a negotiated agreement, whether such

26   term concerns arbitration or otherwise, has resulted in a finding of procedural

27   unconscionability.  Cf. Pokorny v. Quixtar, 601 F.3d 987, 991, 997 (9th Cir. 2010)

28   (upholding finding of procedural unconscionability where form "registration agreement"

7

1    contained form arbitration clause; citing prior authority finding "standardized contract"

2    unconscionable).

3          Sullivan's argument that the Arbitration Provision is procedurally unconscionable

4    because it "merely incorporates by reference" the AAA Rules (see Pl.'s Opp'n at 9:7-13)

5    likewise finds no support in the authority on which Sullivan relies, in this instance, Harper v.

6    Ultimo, 113 Cal.App. 4th 1402, 1406-07 (2003).  As Lumber Liquidators points out, the

7    rules at issue in Harper not only were incorporated by reference but also limited the

8    substantive remedies available to the plaintiffs therein, precluding those plaintiffs from

9    "obtaining tort damages, punitive damages, or any other damages otherwise appropriate in

10   a court of law."  See id. at 1405.  Here, by contrast, Sullivan has made no showing that the

11   AAA Rules referenced by the Employment Agreement limit his available remedies or

12   otherwise restrict the scope of his claims.  Nor, as distinguished from Harper, is there any

13   element of surprise.  See id. at 1405-06 (noting where customer given "preprinted" contract

14   providing that controversies thereunder were to be settled in accordance with Better

15   Business Bureau Arbitration Rules, "customer must inevitably receive a nasty shock when

16   he or she discovers that no relief is available even if out and out fraud has been

17   perpetrated"); see also Sullenberger v. Titan Health Corp., 2009 WL 1444210, at *8 (E.D.

18   Cal. 2009) (rejecting argument that arbitration agreement was procedurally unconscionable

19   because it "provide[d] that the rules of the American Arbitration Association [would] govern,

20   but [did] not provide a copy of those rules"; noting "plaintiff ha[d] not shown that the [AAA

21   rules], referenced in the arbitration agreement, contain provisions that are unfair or

22   inequitable").

23         Nor is the Court persuaded by Sullivan's argument that the Arbitration Provision is

24   unenforceable because it does not specify whether the AAA Rules to be applied are to be

25   those in effect at the time of execution or those in effect at the time of any claimed breach.

26   Although the Harper court did find the unfairness resulting from the above-referenced

27   "artfully hidden" limitation on relief was compounded by the potential that the Better

28   Business Bureau's rules might change, the Ninth Circuit, in so finding, observed that those

8

1  rules were "not just <u>procedural</u> ones" but, rather, had "the effect of <u>substantively</u> limiting the

2  defendant's exposure." <u>See</u> <u>id.</u> at 1406-07 (emphases in original).

3       Lastly, Sullivan's argument that the Arbitration Provision is procedurally

4  unconscionable because "there was [no] clear communication" that opting out of the

5  Arbitration Provision "would have no effect on his employment relationship" (<u>see</u> Pl.'s Opp'n

6  at 9:20-22) fares no better. The case on which Sullivan appears to rely for such proposition,

7  <u>Circuit City Stores, Inc. v. Najd</u>, 294 F.3d 1104 (9th Cir. 2002), is distinguishable, as the

8  contract at issue therein was not negotiated.  <u>See</u> <u>id.</u> at 1106 (noting employer "distributed

9  packet of materials to the stores employees which included a Dispute Resolution

10  Agreement" containing arbitration clause).

11            **2.      Substantive Unconscionability**

12       Sullivan offers no evidence of any overly-harsh or one-sided result arising from the

13  enforcement of the Arbitration Provision.  Instead, Sullivan argues that the Arbitration

14  Provision fails to comply with certain requirements established by the California Supreme

15  Court in <u>Armendariz</u>.  <u>See</u> <u>Armendariz</u>, 24 Cal. 4th at 102.[2]  Sullivan's reliance on such

16  authority is unavailing, however, as <u>Armendariz</u> concerned the arbitration of nonwaivable

17  "statutory civil rights."  <u>See</u> <u>id.</u>  As discussed therein, when a plaintiff seeks to vindicate

18  nonwaivable statutory rights, such as those created by such anti-discrimination statutes as

19  California's Fair Employment and Housing Act ("FEHA"), the above-referenced

20  requirements serve to ensure that those rights and protections are not dissipated by the

21  lack of a judicial forum.  <u>See</u> <u>id.</u>  (noting "beneficiaries of public statutes are entitled to the

22  rights and protections provided by law") (internal quotation and citation omitted); <u>see</u> <u>also</u>

23  <u>Mercuro v. Superior Court</u>, 96 Cal.App. 4th 167, 179 (2002) (applying <u>Armendariz</u>

24  _____

25       [2] As set forth in <u>Armendariz</u>, in accordance with the "basic principle of nonwaivability
    of statutory civil rights," an arbitration agreement applicable to a statutory claim of such
26  nature "is lawful if it (1) provides for neutral arbitrators, (2) provides for more than minimal
    discovery, (3) requires a written award, (4) provides for all types of relief that would
27  otherwise be available in court, and (5) does not require employees to pay either
    unreasonable costs or any arbitrators' fees or expenses as a condition of access to the
28  arbitration forum."  <u>See</u> <u>id.</u> (quoting <u>Cole v. Burns Intern. Security Services</u>, 105 F.3d 1465
    (D.C. Cir. 1997).

1  requirements to arbitration of claims brought under California Labor Code §§ 230.8 and

2  970).  Sullivan cites to no authority holding such requirements are more broadly applicable.

3  Moreover, as set forth below, not only has Sullivan failed to provide legal authority in

4  support of his argument, two of the three factual underpinnings thereof find no support in

5  the instant record.

6      Sullivan argues the Arbitration Provision (1) "does not require a written award," (2)

7  "does not provide for all types of relief that would otherwise be available in court," and (3)

8  "requires [Sullivan] to 'share equally all costs of arbitration.'"  (See Pl.'s Opp'n at 10:21-24.)

9  In that regard, the Court first notes that Sullivan, in support of his first two assertions,

10  neither provides nor cites to any part of the AAA Rules in effect either in 2005[3] or at

11  present.  Moreover, the relevant AAA rules, available for judicial notice, require that the

12  arbitrator's award be in writing.  See AAA National Rules for the Resolution of Employment

13  Disputes, effective January 1, 2004 ("2004 Rules"), Rule 34.c, available at

14  http://www.adr.org/sp.asp?id=26405#n34 (providing "[t]he award shall be in writing"); AAA

15  Employment Arbitration Rules and Mediation Procedures, effective November 1, 2009

16  ("2009 Rules"), Rule 39.d, available at http://www.adr.org/sp.asp?id=32904#39, (providing

17  "[t]he award shall be in writing").  Next, Sullivan offers no evidence to support his assertion

18  that the AAA Rules either did not or currently do not provide for all types of relief that

19  otherwise would be available in district court.  Indeed, to the contrary, the relevant AAA

20  rules provide for all relief available under the law.  See 2004 Rules, Rule 34.d (providing

21  "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable,

22  including any remedy or relief that would have been available to the parties had the matter

23  been heard in court"); 2009 Rules, Rule 39.d (providing "[t]he arbitrator may grant any

24  remedy or relief that would have been available to the parties had the matter been heard in

25  court including awards of attorney's fees and costs, in accordance with applicable law").

26  Lastly, although the Arbitration Provision requires the parties to "share equally in all costs of

27

28      [3] As noted, the Employment Agreement was executed in August 2005.

10

1    arbitration" (see Haskell Decl. Ex. 1A at ¶ 18), Sullivan offers no argument or evidence

2    indicating how such provision would be substantively unconscionable under the

3    circumstances pertaining.  See Armendariz, 24 Cal. 4th at 102 (precluding enforcement of

4    arbitration agreement where employee required to pay "unreasonable costs").

5                **3.     Conclusion as to Unconscionability**

6           Accordingly, for the reasons stated above, Sullivan has failed to show the Arbitration

7    Provision in the Employment Agreement is unenforceable as unconscionable.

8         **B.     Waiver**

9           Sullivan next argues the Arbitration Provision is unenforceable because Lumber

10   Liquidators has waived its right to arbitration.

11          "[W]here a contract provides that arbitration may be demanded within a stated time,

12   failure to make demand within that time constitutes a waiver of the right to arbitrate."  See

13   Platt Pacific, Inc. v. Andelson, 6 Cal. -4th 307, 313 (1993) (denying motion to compel;

14   finding plaintiff had waived right to arbitration by failing to timely demand arbitration

15   pursuant to terms of arbitration agreement).

16          Here, Sullivan argues Lumber Liquidators has waived its right to arbitration by not

17   making its demand for arbitration "within thirty days of the events alleged."  (See Pl.'s Opp'n

18   at 13:7-9.)  Sullivan's argument is unpersuasive.  As Lumber Liquidators points out, the

19   Arbitration Provision does not require Lumber Liquidators to make a demand for arbitration

20   within thirty days of the events giving rise to Lumber Liquidators' claims, but, rather,

21   requires Lumber Liquidators to make such demand within thirty days of the parties' failure

22   to resolve their dispute through mediation.  (See Haskell Decl. Ex. 1A at ¶ 18.)

23          Specifically, the Arbitration Provision states, in relevant part:

24          Prior to arbitration of any dispute, the parties agree to attempt to settle the
            dispute with the assistance of a mutually agreed upon mediator.  If the
25          parties cannot resolve the dispute through mediation, then arbitration must
            be demanded within 30 calendar days or the time when the demanding
26          party knows or should have known of the event or events giving rise to the
            claim.
27
     (See id.) (emphasis added).
28

                                              11

The Arbitration Provision thus makes clear that attempted mediation of a known dispute is a condition precedent to starting the thirty-day clock for filing a demand for arbitration.  Sullivan makes no showing that Lumber Liquidators' demand for arbitration was made more than thirty calendar days after the parties' failure to resolve their dispute through mediation.

Accordingly, Sullivan has failed to show Lumber Liquidators waived its right to arbitration under the Employment Agreement.

**C.  Available Relief**

Lumber Liquidators seeks an order of dismissal on the ground that "the same issues . . . are already before the AAA and the state court" in Massachusetts.  (See Def.'s Reply at 9:9-13; see also Haskell Decl. Ex. 6.)  In particular, Lumber Liquidators, relying on the Declaratory Judgment Act, 28 U.S.C. § 2201, and Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942), argues, the Court has discretion both to abstain from exercising jurisdiction over and to dismiss the instant action in its entirety.  See id. at 494-95 (recognizing district court's discretion as to whether to exercise jurisdiction under Declaratory Judgment Act; setting forth relevant considerations and noting "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided").

Lumber Liquidators' reliance on the above-referenced authority is misplaced, as Sullivan, by the instant action, seeks not only declaratory relief but also an award of monetary damages. (See FAC at 8:12-14.)  Neither the Declaratory Judgment Act nor Brillhart encompasses claims of such nature.  See Brillhart, 316 U.S. at 493, 495 (describing suit therein as one for "declaratory judgment"; noting federal court ordinarily should not "proceed in a declaratory judgment suit" where parties litigating same state law issues in state court); see, e.g., Burlington Ins. Co. v. Devdhara, 2009 WL 2901624, at *4 (N.D. Cal. 2009) (declining to abstain under Brillhart where plaintiffs brought damages claims; noting Brillhart "only applies to pure declaratory judgment actions").  Rather, "federal courts may stay actions for damages based on abstention principles, but those

12

principles do not support the outright dismissal or remand of damages actions." See
Quakenbush v. Allstate Ins. Co., 517 U.S. 706, 707 (1996).

Accordingly, the Court declines to dismiss the FAC and will stay the proceedings
pending resolution of the Arbitration in the Commonwealth of Massachusetts.

**CONCLUSION**

For the reasons stated, defendant's motion is hereby GRANTED in part and
DENIED in part as follows:

1.  To the extent Lumber Liquidators seeks an order dismissing the instant
action, the motion is DENIED.

2.  To the extent Lumber Liquidators seeks in the alternative an order staying
the instant action, the motion is GRANTED and the above-titled action is hereby stayed
pending resolution of the above-referenced Arbitration;

3.  The parties are directed to file a Joint Status Report no later than
December 3, 2010 and every six months thereafter, apprising the Court as to the status of
the proceedings in the Massachusetts litigation.

**IT IS SO ORDERED.**

Dated: June 2, 2010

MAXINE M. CHESNEY
United States District Judge